# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT CINCINNATI

LEVON MILLOW,

          Petitioner,     :     Case No. 1:20-cv-460

    - vs -                                District Judge Michael R. Barrett
                                              Magistrate Judge Michael R. Merz

WARDEN, London
  Correctional Institution,

                                            :
          Respondent.

## REPORT AND RECOMMENDATIONS

This habeas corpus case, brought *pro se* by Petitioner Levon Millow under 28 U.S.C. § 2254, is before the Court on Respondent's Motion to Dismiss (ECF No. 10). Petitioner opposes the Motion (ECF No. 14). Respondent has not filed a reply memorandum in support and the time for doing so under S. D. Ohio Civ. R. 7.2 has expired.

A motion to dismiss involuntarily is a dispositive motion under 28 U.S.C. § 636(b), requiring a recommended disposition from a Magistrate Judge. The Magistrate Judge reference in this case has recently been transferred to help balance the Magistrate Judge workload in this District (ECF No. 16).

Respondent moves for dismissal on the ground that all claims in the Petition are barred by the statute of limitations applicable to habeas corpus actions under 28 U.S.C. § 2254. The relevant statute is 28 U.S.C. § 2244(d) which provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of —
>
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>>
>> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>>
>> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>>
>> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

## Analysis

A Hamilton County grand jury indicted Petitioner January 12, 2000, on three counts of rape in violation of Ohio Revised Code § 2907.02(A)(1)(b) and two counts of gross sexual imposition ("GSI") in violation of Ohio Revised Code § 2907.05(A)(1), with specifications that the victim was under thirteen yeas of age and that Millow compelled her to submit by force (Indictment, State Court Record, ECF No. 9, Ex. 1). A jury convicted Millow on the rape counts and one GSI count, with the remaining GSI count dismissed by the court. *Id.* at Exs. 12 and 13.

Millow was sentenced to three consecutive life terms on the rape charges and eighteen months on the GSI charge. Millow appealed and the convictions were affirmed. *State v. Millow,* 2001 Ohio App. LEXIS 2666 (1st Dist. Jun. 15, 2001), appellate jurisdiction declined, 93 Ohio St. 3d 1446 (Oct. 10, 2001). Millow's conviction became final on direct appeal ninety days later (January 8, 2002) when his time for filing a petition for writ of certiorari in the United States Supreme Court expired. Cases become final on direct review when certiorari is denied or when the time to file a petition for certiorari expires. *Isham v. Randle*, 226 F.3d 691, 694-95 (6th Cir. 2000); *Smith v. Bowersox*, 159 F.3d 345 (8th Cir. 1998); *see also Clay v. United States*, 537 U.S. 522 (2003)(as to § 2255), *Lawrence v. Florida*, 549 U.S. 327 (2007)(indicating *Clay* analysis would also apply to § 2244). Under § 2244(d)(1)(A), the statute of limitations began to run on that date and expired January 9, 2003. Millow's habeas corpus petition was not filed until June 6, 2020, the date on which he deposited it in the prison mailing system (ECF No. 1, PageID 8). Unless Millow can excuse that seventeen-year-plus gap, his petition is time-barred.

Millow argues his Petition is timely because he filed within one year of the Supreme Court of Ohio's August 6, 2019, decision declining to exercise appellate jurisdiction over a decision of the First District Court of Appeals, upholding denial of a motion for new trial. *State v. Millow*, 2019 Ohio App. LEXIS 1833 (1st Dist. May 8, 2019). Millow had filed that new trial motion March 27, 2018 (State Court Record, ECF No. 9-1, Ex. 84).

Petitioner's argument is unavailing. While a motion for new trial can be a collateral attack on a criminal judgment which tolls the statute of limitations under § 2244(d)(2), it does not re-start the limitations period if the statute has already expired. *Payton v. Brigano,* 256 F.3d 405, 408 (6th Cir. 2001).

Petitioner's principal argument is that the statute is tolled by his actual innocence. The controlling precedent on this point is now the Supreme Court's decision in *McQuiggin v. Perkins*,

3

569 U.S. 383 (2013).

> [A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar, as it was in *Schlup* and *House*, or, as in this case, expiration of the statute of limitations. We caution, however, that tenable actual-innocence gateway pleas are rare: "[A] petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup*, 513 U. S., at 329, 115 S. Ct. 851, 130 L. Ed. 2d 808; see *House*, 547 U. S., at 538, 126 S. Ct. 2064, 165 L. Ed. 2d. 1 (emphasizing that the *Schlup* standard is "demanding" and seldom met). And in making an assessment of the kind *Schlup* envisioned, "the timing of the [petition]" is a factor bearing on the "reliability of th[e] evidence" purporting to show actual innocence. *Schlup*, 513 U. S., at 332, 115 S. Ct. 851, 130 L. Ed. 2d. 808.
>
> \* \* \*
>
> [A] federal habeas court, faced with an actual-innocence gateway claim, should count unjustifiable delay on a habeas petitioner's part, not as an absolute barrier to relief, but as a factor in determining whether actual innocence has been reliably shown.

*McQuiggin v. Perkins*, 569 U.S. 383, 386-87 (2013).

The Sixth Circuit anticipated *McQuiggin* in *Souter v. Jones,* 395 F.3d 577 (6th Cir. 2005), where it held Congress enacted the statute of limitations in 28 U.S.C. § 2244(d)(1) "consistent with the *Schlup [v. Delo]* actual innocence exception." The *Souter* court also described the *Schlup* standard as follows:

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup v. Delo,* 513 U.S. 298, 316 (1995)." Thus, the threshold inquiry is whether "new facts raise[] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id*. at 317. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id*. at 327. The Court has noted

4

> that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 140 L. Ed. 2d 828, 118 S. Ct. 1604 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321.

*Souter v. Jones,* 395 F.3d 577, 590 (6th Cir. 2005).

Millow does not present new evidence of actual innocence to this Court, but relies on the evidence he presented to the Hamilton County Court of Common Pleas in his March 27, 2018, motion for new trial. On appeal from denial of that motion, the First District summarized the relevant evidence at trial as follows:

> [*P4]  To understand the present motion, we must first take a brief look at the trial evidence that resulted in Mr. Millow's conviction. Mr. Millow raped and sexually assaulted a young girl, and his victim testified to four separate incidents at two different residences in downtown Cincinnati, where she, her mother, and her younger sisters resided with Mr. Millow. In late summer 1997, Mr. Millow moved in with the (five-year-old) victim and her mother at their residence on 12th Street. Mr. Millow and the victim's mother thereafter had two daughters, the youngest of whom was born on July 4, 1999. Several days later, on July 9, they all moved to Beekman Street and lived there together for about a month until Mr. Millow departed in August. At trial, the (then) seven-year-old victim testified to three incidents of sexual assault occurring at the 12th Street residence as well as a single incident on Beekman Street. She explained that the "first time [she] remember[ed]" an assault occurred after her sixth birthday, at the 12th Street location, and that her "sisters" had been "home at that time" and her "mom [had gone] to take her friend to her house."

*State v. Millow*, 2019-Ohio-1751 (Ohio App. 1st Dist. May 8, 2019).  It then proceeded to describe the new evidence Millow presented to the trial court:

> [*P5]  In support of his 2018 new-trial motion, Mr. Millow recycled the same argument that he presented in his unsuccessful 2007 new-

5

> trial motion, featuring the birth records for his youngest daughter, which reflected a discharge from the hospital on July 9, 1999, at 2:47 p.m. The 2018 motion added, however, an affidavit from Mr. Millow's nephew depicting the events of July 9, 1999. The nephew explained that he had "not talked to; seen or corresponded in any way with [Millow] the entire 17-years [that Millow had] been imprisoned," until Mr. Millow's sister, in March 2017, had "tracked [him] down and informed [him]" of the victim's trial testimony that her "sisters" were at home with her the first time Mr. Millow sexually assaulted her. The nephew interpreted this testimony as "fix[ing]" July 9, 1999, as the day the sexual abuse commenced, which he considered "highly significant," because he and several others had been "in the physical presence" of Mr. Millow and the victim, on that date, between 4:00 and 9:00 p.m., helping with the move to Beekman Street. During that time, the nephew insisted, he witnessed "no visible signs of inappropriate misconduct."
>
> [*P6] Mr. Millow relies on this "new evidence" to establish his innocence and justify a new trial. Seizing upon the victim's use of the plural "sisters," he claims that this evidence now shows that the initial three assaults could not have occurred prior to July 9 (because the victim did not have "sisters" until July 1999). And since his nephew and others saw him acting appropriately on July 9, he concludes that the victim's recollection has been called into question.

*Id.*

The "new evidence" question before the First District is a different question than the one presented to this Court under *McQuiggin*. Under Ohio law, a motion for new trial based on newly-discovered evidence must be filed within 120 days after trial. Ohio R. Crim. P. 33(B). To file later a defendant must obtain permission to file based on a showing "by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence" on which he relies. *Id.* In Millow's case the First District held that:

> Simply incanting "newly discovered evidence," however, does not satisfy the test. We think it is fair to say that Mr. Millow was aware of his youngest daughter's 1999 birth at the time of trial. With that knowledge, he should have appreciated the significance of the phrase "sisters" at the time of trial [footnote omitted]and could have sought to offer exculpatory evidence either at the time or within the

> windows provided by Crim.R. 33. There is no reason why this evidence could not have been presented earlier—indeed, Mr. Millow already tried once before to present evidence about the timing of his youngest daughter's birth. Nor does he convincingly explain why he could not have presented evidence by his nephew (or others present on July 9) prior to now. And even if we could excuse the 17-year delay in tracking down the nephew, his testimony does not absolve Mr. Millow of anything. At best, he provides that during a few-hour window, the nephew did not observe anything amiss.

*State v. Millow*, 2019-Ohio-1751, ¶ 10.

Because the First District was not deciding a question of federal constitutional law in *Millow*, its decision is not entitled to deference under 28 U.S.C. § 2254(d)(1). That is, we do not determine whether its decision is an unreasonable application of Supreme Court precedent. Simply put, there is no United States Supreme Court precedent that determines when state courts must grant a new trial.

On the other hand, the Ohio courts did make one or more "determination[s] of a factual" which this Court must "presume to be correct." 28 U.S.C. § 2254(e). To overcome that presumption, Petitioner must rebut it with "clear and convincing evidence." *Id.*

The first relevant state court factual determination is "We think it is fair to say that Mr. Millow was aware of his youngest daughter's 1999 birth at the time of trial." *Millow, supra*, at ¶ 10. To rebut that finding, Millow relies on his testimony on cross-examination at trial:

> 10 Q. Now, tell me, when is Marchetta's
> 11 birthday?
> 12 A. When is what?
> 13 Q. Marchetta's birthday.
> 14 A. Oh, boy. I can't say right off. I
> 15 cannot say right off. I cannot.
> 16 Q. How about Leah?
> 17 A. I cannot. I'm not good with no
> 18 birthdays. I'm not good with them days, the kids'
> 19 birthdays. I am not.

7

(Trial Transcript, ECF No. 9-2 PageID 1564.)

The fact that Millow claimed on cross-examination at trial not to remember the birth date of his youngest daughter does not rebut the finding by clear and convincing evidence. The quoted testimony is extracted from a portion of Millow's testimony in which the prosecutor had established that Millow was living with the victim and her mother at the time the youngest sister, Leah, was born on July 5, 1999, and had lived with them throughout the pregnancy. *Id.* at PageID 1563-68. Whether or not we credit Millow's trial testimony that he did not remember Leah's birth date at that time, he certainly did know that she had been born. As the First District concluded, if he did not know the exact date at the time of trial and it became crucial in his mind because if the victim's use of the word "sisters," he could surely have learned of the exact date very easily. Indeed, as the First District found, he had already presented this discrepancy in the victim's testimony when he filed his first motion for new trial in 2007.

The second relevant factual determination by the First District is "Nor does he convincingly explain why he could not have presented evidence by his nephew (or others present on July 9) prior to now." *Millow, supra,* at ¶ 10. Petitioner says this conclusion is unreasonable "because that information could only be obtained through rigorous direct and cross-examination of the nephew himself." (Memo. in Opp., ECF No. 14, PageID 1837). That position attempts to shift the burden of proof to the State. The nephew is Millow's substantive witness; he and his family members, particularly his sister, are participants in and witnesses to the efforts made to locate the nephew, but Millow offers nothing from any of them to this Court to rebut the First District's conclusion.

8

The Magistrate Judge concludes Millow has not rebutted either of the relevant First District factual conclusions by clear and convincing evidence. Thus this Court will continue to defer to them to the extent they are relevant to the Motion to Dismiss.

In order for evidence to qualify as "new evidence' to satisfy the *Schlup* standard, it must be newly discovered. In *Dufresne v. Palmer*, 876 F.3d 248 (6th Cir. 2017), the Sixth Circuit held that evidence (in that case, police reports) that could have been discovered by the exercise of due diligence before trial does not qualify as new evidence. Certainly Millow could have discovered the date of birth of his youngest daughter before trial and he knew at the time of trial who was present with him on the date of the offense. The Affidavit of the nephew, Gregory Millow, is attached to Millow's Motion for New Trial (State Court Record, ECF No. 9-1, Ex. B, PageID 934-35). It details Gregory's observations on the date in question, but also lists Gregory's father, younger brother, cousin Lawrence Blunt, and an unnamed friend who were present. At least the other members of the Millow family would have been known to Petitioner. The Affidavit recites that Gregory had not spoken to Levon for seventeen years, but the Motion is not supported by and evidence of efforts made to contact Gregory or any of the other possible witnesses in that seventeen-year period. As found by the First District, Petitioner has not shown that he pursued his new evidence with due diligence.

More importantly, the evidence on which Millow relies is not new evidence of actual innocence of the type required by *Schlup* and *Souter*. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner's new evidence is neither exculpatory scientific evidence nor critical physical evidence. The question then is whether

Gregory's eyewitness account is trustworthy. It must first be discounted by its extreme distance in time from the events reported. Second, it must be discounted by Gregory's interest in the outcome, being a member of Millow's family (and not blood-related to the victim who is not Millow's biological daughter). And finally the value of the Affidavit must be discounted by the incompleteness of Gregory's observations. As the First District found, "[Gregory's] testimony does not absolve Mr. Millow of anything. At best, he provides that during a few-hour window, the nephew did not observe anything amiss." *Millow, supra,* at ¶ 10.

The Magistrate Judge is not persuaded that a reasonable juror, having heard the testimony at trial plus Gregory Millow's testimony, could not have convicted Petitioner beyond a reasonable doubt. Thus this Court has confidence in the outcome of the trial.

**Conclusion**

Because Millow has not satisfied the actual innocence exception to the statute of limitations, Respondent's Motion to Dismiss should be granted and the Petition should be dismissed with prejudice as time-barred. Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should not be permitted to proceed *in forma pauperis*.

January 19, 2021.

s/ *Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal.

## NOTICE REGARDING RECORD CITATIONS

The attention of all parties is called to S. D. Ohio Civ. R. 7.2(b)(5) which provides:

> (5) **Pinpoint Citations**. Except for Social Security cases, which must comply with S.D. Ohio Civ. R. 8.1(d), all filings in this Court that reference a prior filing must provide pinpoint citations to the PageID number in the prior filing being referenced, along with a brief title and the docket number (ECF No. ___ or Doc. No. ___) of the document referenced.

The Court's electronic filing system inserts in all filings hyperlinks to the place in the record which has been cited following this Rule. However, as with most computer systems, the CM/ECF program cannot read pinpoint citations which do not follow the Rule precisely. For example, the first pinpoint citation in ODRC's Reply reads "Plaintiff argues that he could not bring this action until "administrative remedies as (sic) are exhausted (sic)." (Doc. 80, PageId# 987)." The correct citation would have been Doc. No. 80, PageID 987." Because Defendant added the "#" symbol, the program failed to inset a hyperlink. Use of this software is mandated by the Judicial Conference of the United States and cannot be locally modified. **The parties are cautioned to comply precisely with S. D. Ohio Civ. R. 7.2(b)(5) in any further filings.**